## COMMONWEALTH *v.* JOHN GRIFFIN.

[Charged with perjury.]

THE case being adjourned until December 5th, 1842, for judgment, on that day it was entered, that John Griffin be discharged. Before giving judgment, the RECORDER said :

A few days since, Mr. Bernard Duke was brought before me, for assault and battery, &c. I required surety for defendant's appearance. John Griffin voluntarily became bail in $300, swearing he was worth that amount. No objection was made, and he was taken. A warrant was asked a day or two following, for Griffin, for "perjury," he being indebted to the complainants. After the hearing of this alleged perjury, I adjourned till I could consider the subject, and I now give the following reasons for the discharge.

This case is one of interest, not only to the party charged, whose character is involved in this issue, but more particularly is it important, in ascertaining how far a magistrate is justified on a primary hearing, to extend the interpretation of the law in such case.

John Griffin, the defendant, became bail for one Duke, charged before me with an assault and battery. His becoming bail for the party's appearance was voluntary, the result of an impulse of good feeling, incident to the character of his countrymen, on finding a friend in the need of assistance. No attempt was made to induce or procure Griffin to become bail by any one. He justified

in $300, stating on oath that he was worth that amount. A rule was taken out to show cause, why new bail should not be entered, because he, the said Griffin, was not believed to be good for the amount required in the recognizance. Before the return of this rule, Griffin surrendered the defendant, for whom he became bail, and other security was taken. On this state of the case a warrant was asked against John Griffin, for perjury, in swearing, on becoming surety as aforesaid, he was worth $300, when it appeared that in July last he was discharged by his honour, judge Campbell, from arrest, on an execution for $97 77, he filing bond to take the benefit of the insolvent laws.

A warrant was granted, and on the 5th of December a hearing was had. The testimony on this hearing was in substance as above stated. That Griffin became bail —stated on oath that he was worth $300—that execution had issued on the 12th of July last—that no property was found in the house of the said Griffin—that he was taken into custody, and that he was subsequently discharged. No bond was produced, nor could it be found conditioned for his appearing at the insolvent court to take the benefit. His honour, judge Campbell, saw the bond at the time of the discharge, but it is not to be found now in the prothonotary's office. It is either mislaid or lost, or so supposed to be. This is the case of the commonwealth. The defendant was allowed to give evidence, to show that it was no perjury, for that he was worth more than $300. He produced a respectable witness to prove, that on his (the witness) accidentally calling on business with the said Griffin, he took him, the witness, up stairs into a room, and from

some secure place exhibited to him the sum of $361 in notes and specie, which he, Griffin stated to be his property.

It is contended on the part of the commonwealth, that the defence is incomplete, because he, Griffin, should have shown that at the time of his going bail in $300, he was not only worth the $300, but that he was worth such amount independent of all debts and liabilites.

To my mind, the case rests on but two propositions:

1. Did John Griffin falsely and wilfully swear that he was worth $300, in becoming bail for Duke?

2. Have the commonwealth established that he is not worth the amount of bail so required, on this hearing?

The crime of perjury is well defined; its essential ingredient is the malo animo. True there is no fixed period at which the wicked intention must exist, if it but be prior to the oath or affirmation which is wilful and false. The intent decides the volition—the fact, the falsity. It matters not under what circumstances the oath or affirmation is administered, the will can be affected pro or con pending the administration of the legal oath or affirmation. As malice is inferred in certain cases, so can the wilful swearing be presumed after the oath is taken. So far then, as this ingredient of perjury is concerned, it is easily proven—it hardly needs proof—it proves itself. Not so as to the FALSITY of the oath. This must be established clearly. To substantiate, therefore, this second requisite in the charge, it must be shown, that the falsity of the oath is manifest, indisputable, and beyond the reach of a reasonable

doubt; that no just grounds exist, which could give the person charged with his offence, a right to believe that he was swearing truly.   It is to be observed that perjury in a case like this, differs from ordinary perjury; that is to say, where a man states on oath, matters which are not true, and which he knows are not true, from circumstances within his knowledge, and he does it wilfully, is a far different case from that, legally and morally, where an individual who has property, in money or effects, swears he is worth a sum, which he may from circumstances over estimate, but on examination, or some other test, proves to be of less value; for property is uncertain in value, and the possessor's honest over-appreciation of it, is no crime.   In one case the falsity is manifest, and directly brought home to the author of the falsehood.  There is no just ground, in such case, on which the conscience could rely for protection.  But in the other, the contrary is the case.  There, many fair and just grounds are raised as a bulwark for the safety of the accused.   The falsity in this latter case is negatived by facts, which, it is true, do not cover the entire ground of the oath; but at all events, shield it from the censure both of moral and legal falsehood.

I am not to be understood as palliating in the most remote degree, the incautious or thoughtless, or immature oath or affirmation in judicial proceeding.   On the contrary, I deprecate it as much as I do the irreverent and light manner, too many of our judicial oaths are administered; and that too, by some, who in their very manner invite to a loose regard of the solemn consequences involved.

I am regarding this question in its strict legal bear-

ings—quo ad the probable cause, showing the commission of the crime here charged.

If the party charged with a perjury then, who commits it on becoming bail, if he swear or affirm he is worth $300, and it appears he is worth but $250 in money and his ordinary common household goods—his stock in trade, if it but be his implements of trade, does the law imply in such case, that falsity which is the necessary and almost entire basis of the charge of perjury? or, if the case be such as in the present instance, where the person swear he is worth $300, and on the test being put of the truthfulness of the oath, he gives evidence of the fact that he is worth in money $361, and it is also in proof, that an execution is unsatisfied against him for a certain sum, and that at some time ago he applied for the benefit of the insolvent laws of this state—in either of these cases, does the law, can it, imply that such falsity exists as to rest a charge of perjury?

Griffin never realized the benefit of the insolvent laws. He may have acquired large sums of money, large in proportion to his wants and their supply. He may have eluded the searching power of an execution. How far this is honest or honourable, is not a matter in question here; but because he has so baffled the satisfaction of this process, is that proof of his inability to do so? He has shown his worth in money, "paper and specie," more than the amount for which he became bail; this amount of property is liable to be so secreted, as to be beyond the reach of levy or execution. Its possession is prima facie evidence of ownership. The commonwealth must show that this possession is fraudulent, or by collusion with others, to escape this crisis. Time

has been given to obtain such testimony; it has not been produced. The presumption, therefore, is that it is Griffin's property, and that its possession was the ground on which he became liable as bail.

The distinction here taken in regard to the species of perjury, is sanctioned by the spirit of the law, as I believe. The reason of the law is the spirit of the law, and I do not consider that a case like the present, under all its circumstances, the legislature ever intended to class, among those wilful and false oaths or affirmations called perjuries. It would be extending the law too far; it would be an exaggeration of interpretation, that in some cases would punish with penalties, just and severe, crimes, which may not have been committed, and as in this certainly was not contemplated. It is the duty of the magistrate to protect the citizen's individual rights, as well as those of the community. He is not to be a machine, in whose hands the law has reposed an unintelligent confidence. Offering and taking in too many cases, improper or worthless bail, is a serious growing evil. It should be severely punished. It strikes at the very root of the administration of justice; but a wise discrimination should be made. Punish the guilty, but do not be satisfied with any thing less than proof of their guilt. Under the facts as they stand on record, in this case, I am forced to the conviction from their serious consideration, that the crime as charged, is not so established as to raise that probable cause, on which alone justice and the law, require the author of the wrong to be surrendered for punishment.

*John Griffin is discharged.*